Ronald CORRIVEAU, Executor of the Estate of George Corriveau, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 91–40147–GN.

United States District Court, D. Massachusetts.

Sept. 21, 1993.

---

John F. Keenan, Wolfson, Dodson, Keenan & Cotton, Worcester, MA, for plaintiff.

William L. Parker, U.S. Atty's Office, Boston, MA, for defendant.

GORTON, District Judge.

Ronald Corriveau, executor of the estate of George Corriveau, commenced this action for money damages against the United States of America under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680. Plaintiff alleges that Paul Brodeur, while acting within the scope of his employment for the United States Postal Service, negligently caused personal injuries to and the eventual death of George Corriveau, Sr. The action was tried to the Court without a jury. 28 U.S.C. § 2402.

## I. FINDINGS OF FACT

1. The plaintiff, Ronald Corriveau, is the son and executor of the estate of George Corriveau, Sr. ("Mr. Corriveau, Sr."). Ronald Corriveau, resides at Guelphwood Road, Southbridge, Worcester County, Massachusetts.

2. Mr. Corriveau, Sr. was injured in a head-on automobile accident on February 26, 1990 ("the February accident") in which Mr. Corriveau, Sr. was the driver of one automobile and a postal employee was the driver of the other automobile.

3. Mr. Corriveau, Sr. was in a subsequent automobile accident on May 2, 1990 in which he sustained a minor injury to his hand. On May 3, 1990, he was taken to the hospital where he died from myocardial infarction. Mr. Corriveau, Sr., who was 79 years old when he died, resided at 165 Barefoot Road, Southbridge, Worcester County, Massachusetts.

4. The defendant, United States of America, was the employer of Paul Brodeur ("Brodeur"), a postal employee, who owned and was authorized by the defendant to use and was using within the scope of his employment, a Subaru station wagon that was involved in the February accident.

5. The February accident occurred at approximately 1:10 p.m. on Monday, February 26, 1990, on H. Foote Road, in Charlton, Massachusetts. H. Foote Road is a two-lane, north-south road that had been plowed, but it was still covered with snow and sand.

6. The February accident occurred at the crest of a small hill. Brodeur was travelling northbound, uphill to its crest. Mr. Corriveau, Sr. was travelling southbound, just having come over the crest of the hill.

7. Brodeur was driving a Subaru station wagon. Mr. Corriveau, Sr. was driving a Dodge Aries.

8. Brodeur had delivered mail on the right side of the road and was continuing on H. Foote Road to his next mail delivery stop on an adjoining road.

9. Brodeur regularly delivered mail to H. Foote Road and regularly travelled northbound on that road.

10. At the time of the February accident, both cars were travelling within the speed limit.

11. Mr. Corriveau, Sr. was returning home after visiting a family friend.

12. As both cars approached the top of the small hill, Brodeur saw Mr. Corriveau, Sr.'s vehicle coming toward him. Brodeur sounded his horn and applied his brakes, but the vehicles immediately collided left-front to left-front. Mr. Corriveau, Sr. hit his steering wheel with sufficient force to bend it forward.

13. Brodeur left his vehicle and motioned to Mr. Corriveau, Sr. that he was going to call for help.

14. Officer Kleber, a member of the Charlton Police Department at the time, and two ambulances arrived shortly after Brodeur was able to telephone for help.

15. Both Brodeur and Mr. Corriveau, Sr. were taken to Harrington Memorial Hospital in Southbridge, Massachusetts where Mr. Corriveau, Sr. was admitted for treatment for lacerations on his lip and scalp and for a contusion on his chest wall.

16. Officer Kleber, after examining the accident scene, went to the hospital to question Brodeur and Mr. Corriveau, Sr. The officer could not get a description of the accident from Mr. Corriveau, Sr. because he was too badly hurt, but Brodeur gave Officer Kleber a statement 45 minutes after the accident. Officer Kleber then issued a citation to Brodeur for not travelling in his own lane.

17. Officer Kleber determined that the road width at the scene of the accident was 12 feet and that the impact point occurred 7 feet from Brodeur's side of the road and 5 feet from Mr. Corriveau, Sr.'s side.

18. Brodeur subsequently contested the citation and was found "not responsible" at a court hearing on July 9, 1990.

19. A representative of Mr. Corriveau, Sr.'s estate was not present at that hearing, but Officer Kleber, Brodeur and Brodeur's wife were present. Officer Kleber did not object at the hearing to a finding that Brodeur was "not responsible" for the February accident.

20. Mr. Corriveau, Sr. was hospitalized after the February accident for one week. He was released on March 4, 1990, and went to live with his son, Ronald, for a few weeks.

21. Ronald and his wife took care of Mr. Corriveau, Sr. for four weeks. Mr. Corriveau, Sr. was somewhat depressed after the accident, and in order to lift his spirits, his sons suggested that he buy a new car so that he could visit his friends as before.

22. Two weeks after leaving the hospital, Mr. Corriveau, Sr. negotiated with a local car dealer, with whom he had done business before, and purchased a new car. Thereafter, he drove himself on visits to friends and on errands as he had done before the February accident.

23. Mr. Corriveau, Sr. returned to his doctor for follow-up exams in March and April, 1990. On March 19, 1990, he complained to his treating physician, Dr. Van Vooren, that he had difficulty swallowing. Dr. Van Vooren performed a barium swallow test which was negative. Mr. Corriveau, Sr. had lost 12 pounds after the February accident, but after Dr. Van Vooren prescribed medication to alleviate the swallowing problem, Mr. Corriveau, Sr. regained most of the lost weight. Dr. Van Vooren's notes on April 19, 1990, state that Mr. Corriveau, Sr. was "much improved—eating well". Dr. Van Vooren reported on May 3, 1990, that Mr. Corriveau, Sr. had "recovered ... nicely" from the February accident.

24. On May 2, 1990, Mr. Corriveau, Sr. was involved in another automobile accident ("the May accident"). He was driving on Route 131 in Dudley, MA, at approximately 3:06 p.m. when he was seen steering erratically. He drove off the road to the right, hit a rock and the right-front tire of the car popped off. The car proceeded to the left, back across the roadway for approximately 130 feet in oncoming traffic and then up an embankment for another 250 feet until it came to a stop. The car airbag inflated during the accident.

25. Ms. Linda Lastoff, a witness at the trial, had been driving behind Mr. Corriveau, Sr. and saw the entire May accident. After the accident, she stopped at the next driveway and called for police assistance from a home. She then went back to Mr. Corriveau, Sr.'s vehicle. Mr. Corriveau, Sr. was on the passenger's side of the front seat with the

right-front door open. He told Ms. Lastoff that he must have fallen asleep.

26. Sergeant Bruell of the Town of Dudley Police Department arrived on the scene of the May accident, as did an ambulance. Mr. Corriveau, Sr. refused medical treatment even though it was suggested that he go to the hospital in the ambulance.

27. After Mr. Corriveau, Sr. filled out an accident report, Officer Bruell drove him to Ronald Corriveau's house, where Mr. Corriveau, Sr. stayed until approximately 7:00 p.m., whereupon, Ronald drove his father home.

28. Between 7:00 p.m. and 8:00 p.m., May 2, 1990, Mr. George Corriveau, Jr., another of Mr. Corriveau, Sr.'s three sons, arrived at his father's house after hearing about the accident. He stayed with his father until 11:15 p.m. when his father went to bed. Mr. Corriveau, Jr. went home, but returned immediately to his father's house after his father called complaining of chest pains.

29. George, Jr., asked his father if he wanted to go to the hospital or see a doctor and his father refused. He stayed up and talked with his father all night until 6:00 a.m.

30. At 6:00 a.m. on May 3, 1990, George, Jr., called his brother Ronald and asked him to come over to their father's house because Mr. Corriveau, Sr.'s condition had deteriorated during the night.

31. After Ronald arrived at the house, Mr. Corriveau, Sr. complained of chest pains. Ronald called an ambulance, and Mr. Corriveau, Sr., was taken to the hospital.

32. George, Jr., and Ronald Corriveau spoke to the doctors at the hospital and stayed at the hospital for 2–3 hours until their father was pronounced dead from an acute myocardial infarction.

33. The hospital records from Harrington Memorial Hospital indicate that Mr. Corriveau, Sr. had an 18–year history of heart disease, meniere's syndrome and other debilitating physical conditions.

34. Dr. Mark Monane, an expert witness for the defense, examined Mr. Corriveau, Sr.'s medical records. He testified that there was evidence of profound hearing loss, vertigo (described as a loss of balance while in a stationary position), meniere's syndrome (described as a loss of balance and decreased hearing, including a roaring sound in the ears) and advanced hypertension. He expressed the opinion that Mr. Corriveau, Sr.'s death from acute myocardial infarction was likely the result of longstanding, arteriosclerotic heart disease and the May accident. He concluded that, to a reasonable degree of medical certainty, there was no causal relationship between the February accident and Mr. Corriveau, Sr.'s death in May, 1990.

35. Upon reviewing Mr. Corriveau, Sr.'s medical records, Dr. Richard Wolff, a second medical expert for the defense, testified that, in his opinion, there was no causal connection between the February accident and Mr. Corriveau, Sr.'s death on May 3, 1990.

## II. CONCLUSIONS OF LAW

Under the Federal Tort Claims Act ("FTCA"), the United States is liable, in the same manner and to the same extent as a private individual under like circumstances, for personal injury or death caused by the negligent or wrongful act or omission of any employee of the government committed while acting within the scope of his or her employment. 28 U.S.C. §§ 1346(b) and 2674; *Deguio v. United States*, 732 F.Supp. 1240, 1244 (D.Mass.), *aff'd*, 920 F.2d 103 (1st Cir.1990). The law of the place where the act or omission occurred is employed in determining liability. 28 U.S.C. § 1346(b); *Athas v. United States*, 904 F.2d 79, 80 (1st Cir.1990). Because the February accident occurred in Massachusetts, the law of the Commonwealth of Massachusetts applies.

The parties agree that the vehicle driven by Brodeur at the time of the accident was owned by Brodeur and was, at the time of the collision, being temporarily used by the United States Postal Service for the delivery of mail. The parties also agree that, at the time of the accident, Brodeur was acting within the scope of his employment by the Postal Service to which plaintiff presented a claim in writing for damages arising out of the February accident.

Plaintiff alleges that the personal injuries suffered by Mr. Corriveau, Sr. on February 26, 1990 and Mr. Corriveau, Sr.'s subsequent death on May 3, 1990 were caused by Brodeur's negligence. To prevail in a negligence action under Massachusetts law, a plaintiff must prove, by a preponderance of the evidence: 1) the existence of a legal duty owed by the alleged tortfeasor to the plaintiff, 2) a breach of that duty, 3) proximate or legal cause, and 4) actual damage or injury. *Jorgensen v. Massachusetts Port Authority*, 905 F.2d 515, 522 (1st Cir.1990).

■ Massachusetts law imposes a duty on a driver of a motor vehicle to exercise reasonable care in the operation of his or her vehicle. *Deguio*, 732 F.Supp. at 1245. A driver breaches that duty if he or she fails to exercise the degree of care that a reasonably prudent driver would have exercised under the same or similar circumstances. *Id.*

■ With respect to proximate cause, under Massachusetts law, a plaintiff must prove:

first, that the loss was a foreseeable consequence of the defendant's negligence, second, that the defendant's negligence was a but-for cause of the loss, and third, that the defendant's negligence was a substantial factor in bringing about the loss.

*Jorgensen*, 905 F.2d at 522–523. The courts of Massachusetts have held that if a defendant's negligence hastens the death of a person, the negligence is considered to have proximately caused that person's death. *Walker v. Gage*, 223 Mass. 179, 111 N.E. 766, 767 (1916).

■ The United States raises the defense of contributory negligence. The Massachusetts contributory/comparative negligence statute provides, in pertinent part:

Contributory negligence shall not bar recovery in any action by any person or legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not greater than the total amount of negligence attributable to the person or persons against whom recovery is sought, but any damages allowed shall be diminished in proportion to the amount of negligence

attributable to the person for whose injury, damage or death recovery is made.

M.G.L. c. 231, § 85. As the party asserting the claim of contributory negligence, the burden is on the United States to establish the negligence of Mr. Corriveau, Sr. by a preponderance of the evidence. *Id.* Moreover, Mr. Corriveau, Sr. is presumed to have been in the exercise of due care. *Id.*

## A. Personal Injury Claim

■ The Court concludes that the personal injuries suffered by Mr. Corriveau, Sr. as a result of the February accident were proximately caused by the negligence of Brodeur. Brodeur, as the operator of a motor vehicle, owed other motorists, including Mr. Corriveau, Sr., a duty to exercise reasonable care in the operation of that vehicle.

■ The Court concludes that Brodeur breached that duty by failing to exercise reasonable care under the circumstances, in that he failed to stay in his own lane of traffic. The court credits the testimony of Officer Kleber who concluded, after an investigation of the accident scene, that Brodeur was partially in Mr. Corriveau, Sr.'s lane when the accident occurred. At the hospital, shortly after the accident, officer Kleber issued a traffic citation to Brodeur for failure to keep to the right. Brodeur later challenged the citation before a magistrate under M.G.L. c. 90, § 3, and the magistrate entered a finding of "not responsible." The Court concludes, however, that the magistrate's entry is of little significance in this action because: 1) plaintiff was not represented before the magistrate and 2) the magistrate apparently asked Officer Kleber if it was "OK" with him to enter a finding of "not responsible." The court also finds unpersuasive the attempt by the United States to demonstrate that H. Foote Road was of insufficient width to allow the two cars involved in the February accident to pass without incident.

The Court further concludes that the injuries Mr. Corriveau, Sr. sustained in the February accident, a chest contusion and lip and scalp lacerations, were proximately caused by Brodeur's negligence and that such injuries were a foreseeable consequence of that

conduct. Moreover, Brodeur's negligence was a but-for cause of and a substantial factor in bringing about the injuries sustained by Mr. Corriveau, Sr. in the February accident.

The Court finds that the United States has not proven, by a preponderance of the evidence, that Mr. Corriveau, Sr. was contributorily negligent with respect to the February accident. In fact, it presented no persuasive evidence of negligence on the part of Mr. Corriveau, Sr. with respect to that accident.

The Court concludes that Brodeur's negligence on February 26, 1990 caused injury to Mr. Corriveau, Sr. The plaintiff is entitled to and the United States is liable for $3,732.22 in medical expenses and $10,000 for Mr. Corriveau, Sr.'s pain and suffering in connection with his injuries sustained in the February accident and his subsequent loss of appetite and weight, depression and general lethargy.

### B. Wrongful Death Claim

■ The Court concludes that the death of Mr. Corriveau, Sr. on May 3, 1990 was not proximately caused by Brodeur's negligence. Defense expert witnesses, Dr. Mark Monane and Dr. Richard Wolff were of the opinion that there was no causal connection between the February accident and Mr. Corriveau, Sr.'s death. The doctors agreed that longstanding heart disease and hypertension were the significant contributing factors in the death.

The only medical evidence submitted by plaintiff on the issue of a causal connection was a letter from Dr. Robert Lebow, which stated that the accident may have played a part in Mr. Corriveau, Sr.'s death. Dr. Lebow, however, expressly admitted in his letter that the medical records of Mr. Corriveau, Sr., which indicate that he had recovered nicely from the February accident, did not fully support Dr. Lebow's opinion.

Based on the medical testimony and exhibits, the Court concludes that plaintiff has failed to show that Brodeur's negligence on February 26, 1990 was a but-for cause of Mr. Corriveau, Sr.'s death, much less a substantial factor in bringing about or hastening his death.

### III. CONCLUSION

For the foregoing reasons, judgment will be entered for plaintiff on his personal injury claim in the amount of $13,732.22, and judgment will be entered for defendant, United States of America, on plaintiff's wrongful death claim.